■ The plaintiff's third contention is based upon the following provision of section 4 of Act No. 292 of 1926, to wit:

"The Commission may at any time, after due notice to the grantee of any certificate and like notice to any competing carrier an opportunity to be heard thereon had, for good cause, suspend, revoke, alter or amend any certificate issued under the provisions of this Act."

It will be noted that the statute uses the word "may," not "must." It is therefore permissive rather than mandatory, in so far as it concerns the power of the commission, after notice to. the grantee, and its competing carriers, to suspend, revoke, alter, or amend the certificate. When the Stagni and T. S. C. Freight Lines, Inc., applied for certificates, they were not competing carriers of the Gulf Freight Lines, Inc., for that concern was out of business and in the course of liquidation, but notwithstanding that fact the receiver of that corporation was notified of the hearing to be held on the applications mentioned, and he did not oppose the granting of the certificates. In fact, he neither appeared nor was he represented at that hearing. Inasmuch as the Act 292 of 1926 does not require that an existing certificate must be revoked, etc., before another certificate covering the same or a part of the same routes may be issued, and inasmuch as the receiver of the grantee of the then existing certificates was notified, and did not oppose the granting of the certificates applied for by the Stagni and T. S. C. Lines, Inc., and considering that the record shows that, prior to the time the commission's order No. 1264 was rendered, there existed a public necessity, as the term "necessity" has been interpreted by the courts, for the issuance of said order and the granting of the permits mentioned therein, we are of the opinion that the judgment appealed from is correct, and it is therefore affirmed, at appellant's cost.

157 So. 788

## VIVIAN STATE BANK v. SATTERWHITE.

### No. 32726.

Oct. 29, 1934.

Rehearing Denied Nov. 26, 1934.

Jackson & Smith and Charles L. Mayer, all of Shreveport, for appellant.

Robert J. O'Neal, of Shreveport, for appellee.

LAND, Justice.

The Vivian State Bank was placed in liquidation on July 11, 1931, and on January 18, 1932, the liquidator filed his first provisional account, upon which Mrs. Harry Scott Satterwhite, widow of Terrence Satterwhite, was placed as an ordinary creditor for the sum of $7,000.

She opposed the account and prayed that same be amended by placing her thereon as a privileged creditor of the Vivian Bank and the liquidator in the sum of $8,094.67, with 8 per cent. per annum interest thereon from March 7, 1930, until paid, subject to quarterly credits of $141 each, beginning May 25, 1930, and aggregating $705, and that the liquidator be ordered to pay the claims of opponent in preference to all other creditors of the bank and the liquidator and particularly the ordinary creditors shown on the provisional account.

Judgment was rendered rejecting the claim of opponent for a privilege, claimed by her under the provisions of Act No. 63 of 1926, and ordering that she be placed on the provisional account as an ordinary creditor in the sum of $7,094.67, with legal interest from date of last payment of interest; and that the cost of the opposition be paid by opponent.

From this judgment, opponent has appealed.

On March 7, 1930, opponent purchased from the Vivian State Bank two promissory notes, described as follows: Promissory note of John Reeves in the sum of $5,646.67, and promissory note of D. Langston in the sum of $2,448. Each of these notes stipulated for the payment of interest at the rate of 8 per cent. per annum.

On the same day, March 7, 1930, opponent delivered to the Vivian State Bank at Vivian, La., the above notes by handing the same to H. J. Bussa, cashier of the bank, at its place of business in the town of Vivian.

The cashier of the bank, on the delivery of these notes by opponent, signed the following receipt:

"For Safekeeping & Collection.

"Vivian, La., March 7-'30

"Received from Harry Scott Satterwhite ——— $——— Note—Jno Reeves—5,646.67— D. N. Langston 2,448.00 Dollars Total $7,-094.67

"By H. J. Bussa, Cashier."

The note of John Reeves was secured by the pledge of certain certificates of the capital stock of the Texas Company, and the note of D. Langston was secured by certain certificates of the stock of Gulf Oil Corporation. The actual and market value of the stock was in excess of the amount of each note, and those stock certificates were delivered by opponent to the Vivian State Bank with the notes.

On or about May 25, 1930, the Vivian State Bank paid to opponent the sum of $141, representing this amount to be the interest which had accrued on the notes and been collected by the bank from the makers thereof, and quarterly thereafter the bank paid to opponent like amounts representing these payments to be interest which the bank had collected on these notes, all of the payments so made being five in number and aggregating the sum of $705.

The note executed by John Reeves in the principal sum of $5,646.67 was collected in full by the bank from John Reeves on or about May 29, 1930, and on that date was surrendered to the maker; and the note of D. Langston in the principal sum of $2,448 was collected in full by the bank on or about January 29, 1931, and on that date was surrendered to the maker.

The sums collected by the bank were not deposited to the credit of opponent or paid to opponent, and opponent had no knowledge of the collection of the notes by the bank, prior to the time the bank was placed in liquidation.

Opponent contends that these notes were received by the bank as agent for opponent for the purpose of safekeeping and for the purpose of collection and remittance or delivery to opponent and not for deposit.

The cashier of the bank has not testified that the bank was authorized by opponent to deposit any sum or sums which it might or did collect or realize on these notes to the credit of opponent, independently of the receipt "For Safekeeping and Collection," which the bank gave to the opponent in this case.

Opponent testified as follows:

"Q. What if anything was said by you, as to what disposition was to be made of the notes in question? A. They were there for safekeeping.

"Q. Did you discuss that matter with Mr. Bussa? A. Yes sir, the day that Mr. Farmer went there with me. He told Mr. Bussa that I would want them to keep them, with the understanding that I could cash the notes at any time I wanted to.

"Q. Was anything said at that time about keeping the notes? A. I told him to keep them for me, that I had no safe place to keep them. I asked Mr. Bussa if he would mind keeping them for me at the Bank and he said that was a safe place for them." Ev. 39.

Opponent testified that the interest on these notes at the rate of 8 per cent. per annum was placed in the checking account of opponent in the bank and was paid every three months, and that this was the only deposit made by the bank. Ev. 41.

Mr. Farmer, a witness for plaintiff, also testified:

"Q. Did you have any conversation with Mr. Bussa at that time? A. Yes, sir. He

advised me to bring Mrs. Satterwhite down, and I took her down and he said that he didn't have the notes at that time, but that he would have them later and would notify us.

"Q. In this conversation was anything said about what should be done with the investment after it was made? A. Yes sir, it was an investment where she would receive the interest, and if at any time she needed the money that she could·call on him at any time and the bank would take up the notes. She could get her money at any time.

"Q. Was anything said as to where the notes were to be left, or anything about that? A. Yes sir, the bank was to have the notes and collect the interest for her." Ev. 52.

No objection was made to the above testimony when it was offered. Bussa, cashier of the bank, was then under indictment charged with the embezzlement of the proceeds of these notes, and did not take the witness stand to contradict the testimony of opponent and her witness, Mr. Farmer.

█ The contract for "Safekeeping and Collection" of these notes, under the evidence adduced without objection, clearly shows that the proceeds of the notes were not to be deposited to the credit of opponent, but were to be delivered to her by the bank, which had agreed to cash the notes on demand by plaintiff.

Under such a state of facts, it is clear that these notes were received by the bank as agent for opponent, for the purpose of remittance or delivery of proceeds to opponent and not for deposit, and that opponent is a first privileged creditor of the bank, under the plain provisions of Act No. 63 of 1926.

Section 1 of this act reads as follows: "Be it enacted by the Legislature of Louisiana, That when any bank receives as agent (whether as agent of another bank or of any person, firm or corporation) for collection and remittance or delivery to its principal and not for deposit any bill, note, check, order, draft, bond, receipt, bill of lading, or other evidence of indebtedness, or other instrument, and collects or realizes any money on the same, and has not deposited same to the credit'of said principal, the principal shall have a privilege on all of the property and assets of said agent bank for the amount so collected or realized by said agent bank, which privilege shall be superior to the claims of all depositors of said agent bank, the claims of all creditors of said agent bank having no privilege and to all other general privileges on the property and assets of said agent bank, except those for law and judicial charges."

█ 2. It is argued that opponent did not pay the full face value of the notes, the sum of $8,094.67, but only $7,094.67.

Be that as it may, the bank owned the notes and sold them to plaintiff for the purchase price agreed upon, and then collected from the makers the full face value and did not deposit the proceeds to the credit of opponent. The only deposit placed to the account of opponent was the quarterly interest on these notes collected by the bank.

It is therefore ordered that the judgment appealed from be annulled and reversed.

It is now ordered that the first provisional account of the liquidator of the Vivian State

Bank be and the same is hereby amended by placing thereon Mrs. Harry Scott Satterwhite, opponent, as a privileged creditor of the bank and the liquidator in the sum of $8,094.67, with 8 per cent. per annum interest thereon from March 7, 1930, until paid, subject to quarterly credits of $141 each, beginning May 25, 1930, and aggregating $705, and that the liquidator of the bank be and is hereby ordered to pay the claims of opponent in preference to the claims of all depositors of the bank, the claims of all creditors of the bank having no privilege, and to all other general privileges on the property and assets of the bank, except those for law and judicial charges.

It is further ordered that the liquidator of the bank pay all costs of this opposition.